```
                    United States District Court
                      District of Massachusetts
┌─────────────────────────────────────┐
                                      )
Jeannie Lee,                          )
                                      )
        Plaintiff,                    )
                                      )
        v.                            )   Civil Action No.
                                      )   19-12289-NMG
Howard Hughes Medical Institute,      )
                                      )
        Defendant.                    )
                                      )
└─────────────────────────────────────┘
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from an employment dispute between Dr. Jeannie Lee ("Dr. Lee" or "plaintiff") and her former employer, Howard Hughes Medical Institute ("HHMI"). Dr. Lee alleges that HHMI 1) discriminated against her on the basis of sex and race in violation of M.G.L. c. 151B, and M.G.L. c. 149 §105A (Counts I, II and III) and 2) breached their employment contract (Counts IV and V). Before the Court is defendant's motion to dismiss the breach of contract claims. For the reasons that follow, that motion will be allowed.

**I. Background**

Dr. Lee is a resident of Cambridge, Massachusetts. She holds both an M.D. and Ph.D. from the University of Pennsylvania Medical School and is a Professor of Genetics at

-1-

Harvard Medical School.  HHMI is a Delaware non-profit medical research corporation with headquarters in Chevy Chase, Maryland. HHMI employs established biomedical researchers as "Investigators".  Once appointed, HHMI Investigators become employees of HHMI while they continue their research at their previously established laboratories or home institutions.

In 2000, Dr. Lee was selected to become an HHMI Investigator.  At the time of her appointment, Dr. Lee was conducting research at Massachusetts General Hospital ("MGH") in Boston, MA.  After her selection, HHMI provided funding to support Dr. Lee's lab at MGH where she continued her work.

At the time of her appointment, Investigators were appointed to five-year renewable terms (in 2017 those terms were extended to seven years).  In order to be reappointed, an Investigator undergoes a rigorous evaluation of his or her scientific accomplishments.  After evaluation, an Investigator receives an overall grade.  If the Investigator receives an overall grade of "A" or "B", he or she is reappointed for another term.  If, however, an investigator receives a grade of "C", the appointment is not renewed.

In 2006 and 2011 Dr. Lee received positive "A" reviews and was reappointed to successive terms.  At her 2016 review, however, she received a "C" grade and was informed that her appointment would not be renewed for a fourth term.

By not renewing her position for a fourth term, plaintiff claims that HHMI failed to comply with provisions of an HHMI Investigator Administrative Handbook ("the Handbook") and therefore breached her employment contract.  In various sections of the Handbook related to employment at HHMI, it sets out numerous criteria used to evaluate an Investigator's work and discusses the process for renewal of an appointment.  The Handbook also contains provisions which address employee salaries and other relevant information.

Dr. Lee contends that the Handbook was incorporated into her employment contract.  She maintains that when HHMI failed to renew her appointment, it contravened certain provisions in the Handbook and, therefore, breached their contract.

HHMI rejoins that Dr. Lee has failed to state a claim for breach of contract because the terms of the Handbook do not bind either HHMI or Dr. Lee and she cannot show that the Handbook constitutes a contract under Massachusetts law.

## II. **Motion to Dismiss**

### A. Legal Standard

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face."

Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  A court may not disregard properly pled factual allegations even if actual proof of those facts is improbable. Id.  Rather, the relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. Id. at 13.

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)

**B. The Handbook**

Under Massachusetts law, whether an employee handbook constitutes an enforceable contract turns on a variety of factors "including its content and the circumstances of its distribution." Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 559 (1st Cir. 2005).  In Jackson v. Action for Boston Community Development, Inc. the Supreme Judicial Court of

Massachusetts ("the SJC") laid out a multi-factor test to evaluate that question. Jackson v. Action for Boston Community Development, Inc., 403 Mass 8 (1988).  Those factors are:

> (1) whether the manual allows the employer to unilaterally amend the terms at-will; (2) whether the manual states that it provides only "guidance" as to the employer's policies; (3) whether there were any negotiations over the terms of the manual; (4) whether the manual stated a term of employment; (5) whether the employer called any "special attention" to the manual; and (6) whether the employee was required to sign, assent-to, or acknowledge the manual's policies as a condition of employment.

Grant v. Target Corp., No. 15-CV-12972-ADB, 2017 WL 2434777, at *3 (D. Mass. June 5, 2017)(quoting Jackson, 403 Mass. at 13-15.)

In a later decision, the SJC explained that those factors are not "rigid prerequisites" but were meant to guide courts when evaluating whether or not an employee handbook constituted part of an employment contract. O'Brien v. New England Tel. & Tel. Co., 422 Mass. 686, 692, 664 N.E.2d 843, 847 (1996).  On balance, courts employ the Jackson factors as a guide to assess "the objective reasonableness of an employee's belief that a manual is binding." Grant 2017 WL 2434777 at *4.

Analysis of the Jackson factors militate against a finding that the Handbook in this case constituted an employment contract.  The very first page of the Handbook contains a disclaimer which states,

> HHMI may unilaterally, at any time and in its discretion, amend, supplement, modify, or eliminate any or all policies described in this Handbook (with the exception of policies relating to at-will status of employees), or any or all benefits described in this Handbook, with or without prior notice.

Although not dispositive, such an unambiguous disclaimer, highlighted on the first page on the Handbook, demonstrates HHMI's intent that the Handbook was not part of an enforceable employment contract and, because it allows the employer unilaterally to amend the Handbook, fits squarely under the first Jackson factor. See also Ferguson v. Host Int'l, Inc., 757 N.E.2d 267, 272 (Mass. App. Ct. 2001) (noting that if an employer "does not want the manual to be capable of being construed by the court as a binding contract...[a]ll that need be done is the inclusion in a very prominent position of an appropriate statement that there is no promise of any kind by the employer contained in the manual.")

    With respect to the second Jackson factor, the Handbook makes a clear distinction between policy descriptions in the Handbook and so-called official policies.  The Handbook states that policy descriptions in the Handbook are "summaries" of official policy and that in the event of a discrepancy between information summarized in the Handbook and an official policy, the official policy controls.

As to the third factor, Dr. Lee does not allege that there were negotiations over the terms of the Handbook.  The remainder of the factors contemplated by the Jackson court also suggest the conclusion that the Handbook is not an employment contract.  The Handbook specifically states that employment at HHMI was a "voluntary employment-at-will relationship for no definite period of time."  Finally, Dr. Lee does not allege facts that demonstrate that HHMI called special attention specifically to the Handbook nor does she claim that she was required to sign or otherwise acknowledge the Handbook as a condition of her employment.

Plaintiff has not pled sufficient additional facts to demonstrate that she reasonably believed the Handbook was a contract to overcome application of the Jackson factors.  Her complaint is devoid of facts surrounding her receipt of the Handbook or its distribution.  She does not allege, for instance, that the Handbook was issued to all employees or that she was given the Handbook in conjunction with her hiring. See DeCaro v. Hasbro, Inc., 542 F. Supp. 2d 141, 153 (D. Mass. 2008) ("[T]he fact that the written policies were not distributed to employees suggests that [employer] did not intend to bind itself to apply those policies consistently in all situations.").

As to the third factor, Dr. Lee does not allege that there were negotiations over the terms of the Handbook.  The remainder of the factors contemplated by the Jackson court also suggest the conclusion that the Handbook is not an employment contract.  The Handbook specifically states that employment at HHMI was a "voluntary employment-at-will relationship for no definite period of time."  Finally, Dr. Lee does not allege facts that demonstrate that HHMI called special attention specifically to the Handbook nor does she claim that she was required to sign or otherwise acknowledge the Handbook as a condition of her employment.

Plaintiff has not pled sufficient additional facts to demonstrate that she reasonably believed the Handbook was a contract to overcome application of the Jackson factors.  Her complaint is devoid of facts surrounding her receipt of the Handbook or its distribution.  She does not allege, for instance, that the Handbook was issued to all employees or that she was given the Handbook in conjunction with her hiring. See DeCaro v. Hasbro, Inc., 542 F. Supp. 2d 141, 153 (D. Mass. 2008) ("[T]he fact that the written policies were not distributed to employees suggests that [employer] did not intend to bind itself to apply those policies consistently in all situations.").

Moreover, although Dr. Lee states in her complaint that her employment contract incorporates provisions of the Handbook, she does not sufficiently describe her employment contract or its provisions to state a plausible claim.

Accordingly, HHMI's motion to dismiss will be allowed and Dr. Lee's breach of contract claims will be dismissed without prejudice.  If Dr. Lee maintains an objectively reasonable belief that the Handbook constituted an enforceable contract, she may amend her complaint to include additional facts relevant to that contention.

### ORDER

For the foregoing reasons, defendant's motion to dismiss plaintiff's breach of contract claims (Counts IV and V of her complaint) (Docket No. 6) is **ALLOWED** and those claims are dismissed without prejudice.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated May 5, 2020